J-A14040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                 :         PENNSYLVANIA
                                                 :
                 v.                              :
                                                 :
                                                 :
                                                 :
JUSTICE JULIO MORALES, III             :
                                                 :
             Appellant                    :  No. 2956 EDA 2022

Appeal from the Judgment of Sentence Entered September 27, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0002928-2021

BEFORE:  PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED FEBRUARY 08, 2024**

Justice Julio Morales, III ("Morales") appeals from the judgment of sentence imposed after a jury found him guilty of strangulation—blocking the nose and mouth of the person ("Strangulation"), recklessly endangering another person ("REAP"), and endangering the welfare of a child ("EWOC").[1] We affirm.

Morales and A.C. ("Mother") are the parents of a daughter, born in 2021 ("Child").  In September 2021, Mother reported to police that Morales had physically abused Child.  Mother gave police a recording from a baby monitor ("the recording") showing Morales alone with Child, then three-and-one-half months old.  We summarize the recording as follows.[2]  The recording begins

_____

[1] **See** 18 Pa.C.S.A. §§ 2718(a)(2), 2705, 4304(a)(1).

[2] The trial court admitted the recording as Commonwealth's Exhibit 1 pursuant to a stipulation of the parties, and the Commonwealth played the recording during trial.  **See** N.T., 7/13/22, at 33-36.

with Child lying in a changing table next to her crib and Morales standing over her. *See* Recording at 00:01.[3] Morales's back is turned to the camera. *See id*. Child is not fully visible through the rails of the crib and changing table, but the recording shows Child moving her arms, hands, legs, and feet. *See id*. at 00:01 to 00:24. Child is crying loudly and continues to cry through most of the video. *See id*. at 00:01 to 2:06.

Morales moves to one side of the room, gets a "onesie," and returns to the changing table. *See id*. at 00:05 to 00:29. He stands at the side of the changing table, and the recording captures the front of his body and a profile of his face. *See id*. at 00:38-00:51. He hushes Child, and appears to arrange objects above and around the location of Child's head. *See id*. Child's crying intensifies. *See id*. Morales holds the onesie with both of his hands. *See id*. at 00:51. Morales then puts his right hand, palm side down, into the changing table in the location of Child's head. *See id*. at 00:51 to 00:52. Although neither his hand nor Child's face is visible, Child's loud cries suddenly stop, and she kicks her legs up into the air. *See id*. at 00:52 to 00:58. Child cannot be heard for a period of nearly six seconds on the recording, and during this time, she flails her legs. *See id*. When Morales removes his hand from the changing table, the Child's cries are again immediately audible. *See id*. at 00:58 to 00:59.

---

[3] The recording contains a date-hour-minute-second time stamp indicating that the incident occurred in the afternoon of July 2021. We cite the recording using the elapsed time shown on the application used to view the recording.

Morales then begins putting the onesie on Child as she continues crying. Morales tells her to, "Stop it." *See id*. at 01:13 to 01:14. He pulls roughly on the onesie and Child's arms as he puts the sleeves on her arms. *See id*. at 01:14 to 01:17. Morales pulls the onesie forcefully down Child's back and, while pulling on the onesie, lifts her bottom into the air over the rails of the crib and changing table. *See id*. at 01:23 to 01:25. Once Child is again lying on the changing table, Morales appears to adjust the onesie around Child's bottom and then around her head and shoulders. *See id*. at 01:24 to 01:40. Child continues to cry, and Morales makes a slapping motion into the changing table around the location of Child's head. *See id*. at 01:40 to 01:43.

After putting the onesie on Child, Morales abruptly pulls Child up out of the changing table by her shoulders and moves his hands to her chest and back while Child is in midair. *See id*. at 01:53 to 01:54. He pulls Child head-first toward his shoulder. *See id*. at 01:54 to 01:55. It appears he almost drops Child but lifts his leg as he brings her closer to his body to cradle and secure her to his chest. *See id*. at 01:54 to 01:56. After securing Child, he repeatedly presses Child's face against his arm or chest, muffling Child's cries. *See id*. at 01:58 to 02:01. He then leaves the room with Child.

The Commonwealth charged Morales with Strangulation, REAP, and EWOC. The REAP and EWOC counts alleged alternate factual bases: that Morales covered Child's nose and mouth "and/or" handled Child roughly

J-A14040-23

without supporting her head and limbs. Information, 1/13/22, at 1.[4] Morales proceeded to a jury trial. The Commonwealth played the recording to the jury and presented no other evidence. Morales did not testify. The jury found Morales guilty of all charges.[5] On September 27, 2022, the trial court sentenced Morales to an aggregate term of eighteen to forty-eight months of imprisonment followed by thirty-six months of probation. Morales timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Morales raises the following issues for review:

1. Whether, at trial, there was insufficient evidence to convict [Morales] of Strangulation . . . as the Commonwealth did not

---

[4] The Commonwealth initially charged separate counts of REAP for impeding Child's breathing and handling Child roughly without supporting her head and limbs, respectively. *See* Information, 1/13/22, at 1. At trial, the court consolidated the factual averments of the separate REAP counts into a single count. *See* N.T., 7/13/22, at 12-14, 110.

[5] The jury answered a special interrogatory and found Morales committed the crime of strangulation against a family or household member. *See* Verdict Slip, 7/13/22; *see also* 18 Pa.C.S.A. § 2718(d)(2)(i) (grading strangulation as a second-degree felony if committed against a family or household member).

We note that the Commonwealth charged EWOC as a second-degree felony. *See* Information, 1/13/22, at 1. At trial, the Commonwealth did not request special jury instructions or a special interrogatory for the grading of EWOC, and the trial court instructed the jury on EWOC generally. *See* N.T., 7/13/22, at 13, 66-67. The trial court thereafter sentenced Morales on EWOC graded as a first-degree misdemeanor, which did not require findings that Morales's conduct created a substantial risk of death or serious bodily injury and was part of a course of conduct. *See* N.T., 9/27/22, at 34; *see also* 18 Pa.C.S.A. § 4304(b)(1)(i), (iv) (grading EWOC generally as a first-degree misdemeanor or as a second-degree felony if in the commission of the offense, the defendant's conduct created a substantial risk of death or serious bodily injury and his conduct was part of a course of conduct).

- 4 -

present evidence of the element that [Morales] blocked both the nose and mouth of [Child] in the singular piece of evidence in the case, Commonwealth's Exhibit 1?

2. Whether, at trial, there was insufficient evidence to convict [Morales] of [EWOC] and [REAP] as the Commonwealth did not present evidence of the element that [Morales] endangered [Child] by not supporting her head or limbs in the singular piece of evidence in the case, Commonwealth's Exhibit 1?

3. Whether, at trial, there was insufficient evidence to convict [Morales] of [EWOC] and [REAP] as the Commonwealth did not present evidence of the elements that [Morales] knowingly and recklessly engaged in the conduct in the singular piece of evidence in the case, Commonwealth's Exhibit 1?

Morales's Brief at 6-7 (internal citations omitted).

Morales's issues all implicate the sufficiency of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). When considering a challenge to the sufficiency of the evidence:

[W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute

- 5 -

our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. ***See Commonwealth v. Orr***, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*).

Section 2718 of the Crimes Code defines Strangulation as follows: "A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing . . . of another person by . . . blocking the nose and mouth of the person." 18 Pa.C.S.A. § 2718(a)(2). To convict an individual of REAP, the Commonwealth must prove the individual "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. A conviction for EWOC requires proof a parent knowingly endangers the welfare of a child by violating a duty of care, protection, or support to the child's physical or moral well-being and the child was under eighteen years of age. ***See*** 18 Pa.C.S.A. § 4304(a)(1) & comment; ***see also Commonwealth v. Barkman***, 295 A.3d 721, 732 (Pa. Super. 2023).[6] Neither REAP nor EWOC requires proof

---

[6] As to the *mens rea* requirements for REAP and EWOC, 18 Pa.C.S.A. § 302 states:

*(Footnote Continued Next Page)*

that the victim suffered an injury. *See Commonwealth v. Howard*, 257 A.3d 1217, 1227 (Pa. 2021) (plurality) (noting that the *mens rea* requirement of EWOC requires a knowing violation of a duty of care and the knowing creation of a dangerous situation);[7] *Commonwealth v. Reynolds*, 835 A.2d 720, 727-28 (Pa. Super. 2003) (noting that the offense of REAP requires the creation of danger accompanied by the defendant's actual present ability to inflict harm).

_____

> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(2)-(3).

[7] In *Howard*, our Supreme Court concluded that allowing a child to ride in a car-for-hire without a car seat, absent any other indicia of dangerousness, did not establish a mother knowingly endangered her child's welfare. *See Howard*, 257 A.3d at 1228. The Court emphasized that the "knowing" element of EWOC does not require a defendant to be aware that a particular harm or injury is practically certain to occur. *See id*. at 1227. Rather, the focus of EWOC is on the creation of a dangerous situation for a child. *See id*.

In his first issue, Morales argues the Commonwealth failed to prove he committed the act necessary to sustain his conviction for Strangulation. He contends that the recording did not show Child's face and the jury could not reasonably infer he blocked Child's nose based only on the audio portion of the recording. He also asserts the recording showed him holding a pacifier and the trial evidence was equally consistent with him putting a pacifier in Child's mouth.

The trial court concluded this issue lacked merit. The court acknowledged the recording did not show Morales putting his hand over Child's nose and mouth. The court explained the recording nevertheless established: (1) Morales moved his hand toward the area of Child's face; (2) Morales's hand was large enough to cover Child's nose and mouth; (3) once Morales placed his hand into the changing table, there was a distinct change in the audio from the sounds of an infant crying to muffled noises; (4) the change in the audio coincided with Child "thrashing her legs[;]" and (5) after Morales removed his hand from the changing table, the audio changes again to "immediate screaming and crying" from Child. Trial Court Opinion, 1/4/23, at 12. The court observed that the "muffled sounds and thrashing of legs [was] consistent with a person whose breathing had been impeded." *Id*.

Having reviewed the recording in the light most favorable to the Commonwealth, we discern no merit to Morales's argument. The recording does not directly show Morales covering Child's nose and mouth. However, the combined circumstances, as the trial court noted, established a reasoned

basis to infer that he blocked Child's nose and mouth. Those circumstances included the positioning of Morales's hand as he reached into the changing table, the sudden quieting of Child's cries, Child's violent kicking of her legs as Morales appears nearly motionless with his arm extended into the changing table, and the almost immediate resumption of Child's audible crying once Morales removed his hand from the changing table. **See** Recording at 00:51-00:58. These circumstances belie Morales's suggestion that it was equally probable that he was simply giving Child a pacifier rather than covering Child's nose and mouth. **Compare** Recording at 00:51 to 00:52 **with** Morales's Brief at 12.

Based on the totality of the foregoing evidence, we conclude there was a sufficient circumstantial basis to support the jury's finding that Morales committed the requisite act of blocking Child's nose and mouth. **Cf**. **Franklin**, 69 A.3d at 722 (noting that the Commonwealth may sustain a conviction based on wholly circumstantial evidence). Thus, Morales's first issue challenging his conviction for Strangulation fails.

In his next two issues, Morales challenges the sufficiency of the evidence of his convictions for REAP and EWOC. Morales incorporates by reference his previous argument that the Commonwealth failed to establish he blocked Child's nose and mouth. Morales then focuses on the Commonwealth's alternate allegation that he committed REAP and EWOC when he roughly handled Child without supporting her head and limbs. He contends the recording showed only that he had "trouble picking up [Child]" and "fumble[d]

slightly." Morales's Brief at 11, 13. He concedes his mistakes when picking up Child, but maintains such parental mistakes alone are insufficient to prove REAP and EWOC. He asserts he supported Child's head when picking her up and managed to hold her without dropping her or otherwise putting her in danger. He claims the Commonwealth failed to establish the necessary *mens rea* of recklessly or knowingly putting Child in danger. *See id*. at 24-29 (discussing, among other decisions, *Commonwealth v. Hutchins*, 42 A.3d 302, 312 (Pa. Super. 2012), and *Commonwealth v. Vela-Garrett*, 251 A.3d 811 (Pa. Super. 2021)).

The trial court rejected Morales's challenges to his REAP and EWOC convictions. Initially, the court observed that Morales's act of covering Child's nose and mouth was alone sufficient to establish the requisite endangerment and *mens rea* for REAP and EWOC. *See* Trial Court Opinion, 1/4/23, at 13. The trial court added the recording showed Morales's anger and deep frustration and his "manhandling of [Child], including smacking her and yanking her arms." *Id*. The court described in greater detail how Morales "abruptly grabb[ed Child] and fl[ung] her into the air to himself, [and] almost dropp[ed] her." *Id*. Upon its review, the court concluded the recording was sufficient for the jury to conclude Morales: (1) created a dangerous situation that placed Child at risk of serious bodily injury and acted with the recklessness required to convict him of REAP and (2) knowingly endangered Child by creating a dangerous situation as required to convict him of EWOC. *See id*. at 13-14.

- 10 -

We initially reiterate the Commonwealth raised alternate factual bases for the REAP and EWOC offenses, namely, the impairment of Child's breathing by covering her nose and mouth "and/or" handling Child roughly without support of her head and limbs. Information, 1/13/22, at 1; **see** N.T., 7/13/22, at 12-14, 110. As discussed *supra*, we have concluded that there was sufficient circumstantial evidence for the jury to determine Morales covered Child's nose and mouth and thereby impeded her breathing. Morales does not separately argue the evidence he strangled Child by covering her nose and mouth was insufficient to sustain his REAP and EWOC convictions. Therefore, we could affirm Morales's REAP and EWOC convictions due to Morales's failure to argue that the offense of Strangulation was insufficient to prove all of the elements of REAP and EWOC. **See** Pa.R.A.P. 2119(a); **Commonwealth v. Sexton**, 222 A.3d 405, 415 (Pa. Super. 2019) (disapproving of, and finding waiver due to, an appellant's bare arguments incorporating by reference other portions of his brief).

In any event, we discern no merit to Morales's argument that his alleged parental mistake or trouble picking up Child rendered his REAP and EWOC convictions infirm. Morales's factual claim that he merely had trouble picking Child up and only slightly fumbled her lacks support in the record. The recording demonstrated Morales's growing anger and frustration with Child. Morales started by hushing Child, then blocked Child's nose and mouth. **See** Recording at 00:35, 00:51 to 00:58. He then told Child to "stop it," and appeared to slap her. **See id**. at 01:12 to 01:13, 01:40 to 01:43. The

recording then showed Morales picked up his three-and-a-half-month-old Child by her shoulders and forcefully flung her out of the crib, at one point holding her in the air by her chest and back and without supporting her head or limbs. **See** Recording at 01:53 to 01:54. At another point, Child's body was nearly parallel to the ground as Morales brought her, head-first, closer to him, and then attempted to cradle her before almost dropping her. **See id**. at 01:54 to 01:55. Even after securing Child, he repeatedly pressed her face into his arm or chest and briefly muffled her cries. **See id**. at 01:58 to 02:01.

Morales's legal arguments concerning his REAP and EWOC convictions are also unpersuasive. The mere fact that Morales did not drop or injure Child does not preclude a conviction for REAP or EWOC. **See Howard**, 257 A.3d at 1227; **Reynolds**, 835 A.2d at 727-28. Similarly, the absence of an accident or injury does not support his argument that he did not place Child at risk of serious bodily injury or other physical harm. Morales's reliance on case law holding that driving under the influence does not *per se* establish the *mens rea* for REAP and EWOC merits no relief. In those cases, this Court has required additional indicia of recklessness or unsafe driving beyond intoxication, or even an accident, to establish the necessary *mens rea* for REAP and EWOC. **See Hutchins**, 42 A.3d at 312; **Vela-Garrett**, 251 A.3d at 816-19. Here, the recording of Morales roughly handling Child without supporting her head and limbs while picking her up provided the additional indicia of

unsafe conduct which this Court found lacking in *Hutchins* and *Vela-Garrett*.[8]

Having reviewed Morales's factual and legal arguments in light of the entire record and our standard of review, we conclude the jury had sufficient bases to reject Morales's arguments he engaged in a harmless parenting mistake and instead convict him of REAP and EWOC for his rough handling of Child without support her head and limbs. *Cf. Orr*, 38 A.3d at 873 (stating that the trier of fact is free to pass upon the weight of the evidence produced and believe all, part or none of the evidence). The recording provided the jury with reasonable basis to find Morales's rough handling of Child without supporting her head and limbs recklessly created a risk of serious bodily injury. Similarly, there was a sufficient basis to find that Morales knowingly violated a duty of care to Child's physical welfare and knowingly created a

_____

[8] To the extent Morales relies on the unpublished 2021 memorandum decision in *Commonwealth v. Copney*, 266 A.3d 627, 2021 WL 4739491 (Pa. Super. 2021) (unpublished memorandum), that decision is not binding on this panel and may only be cited for its persuasive value. *See* Pa.R.A.P. 126(b)(2). In *Copney*, this Court affirmed the dismissal of EWOC charges where the defendant fell asleep on a couch while holding a child to his chest and awoke to find the child's face had slipped between his armpit and the couch. *See Copney*, 2021 WL 4739491 at *2. The child was unresponsive and died, and an autopsy listed the cause of death as sudden unexplained infant death syndrome and the manner of death as undetermined. *See id*. at *1-2. The *Copney* Court concluded that although the defendant was aware of the risks of falling asleep with the child, he did not violate a duty of care and knowingly place the child in danger. *See id*. at *9. Here, Morales's rough handling of Child without supporting her head and limbs created a far more obvious risk of injuring Child than falling asleep with a child. Thus, *Copney* is distinguishable and not persuasive in this case.

danger of injuring Child. Accordingly, we discern no merit to Morales's challenges to his convictions for REAP and EWOC.

Judgment of sentence affirmed.

President Judge Panella joins this decision.

Judge Dubow notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/8/2024