J-S29040-24

2024 PA Super 266

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :  PENNSYLVANIA
                             :
v.  :
                             :
                             :
                             :
ANDRE JOHNSON  :
                             :
Appellant  :  No. 171 WDA 2023

Appeal from the Judgment of Sentence Entered September 1, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001017-2022

BEFORE: LAZARUS, P.J., DUBOW, J., and KING, J.

OPINION BY KING, J.:  **FILED: November 13, 2024**

Appellant, Andre Johnson, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for disorderly conduct, driving without a license, and duties at a stop sign.[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> [On November 11, 2021,] Officer Wolfe of the Glassport Borough Police was on patrol when she conducted a traffic stop of a vehicle driven by [Appellant after he failed to stop at a stop sign]. [Appellant] failed to yield to lights and sirens, proceeded at a high rate of speed and brought his vehicle to a stop on the street outside of a residence. During the hour-long encounter, [Appellant] became belligerent, screamed at the officer, approached her several times, and called her a "fucking bitch" numerous times all in the presence of the public. Office[r] Wolfe testified that

---

[1] 18 Pa.C.S.A. § 5503(a)(3); 75 Pa.C.S.A. §§ 1501(a); and 3323(b), respectively.

[Appellant], "advised me that he would be seeing my daughter. Then proceeded to tell me not to worry because he's a lover, not a fighter."

A [w]itness to the scene[, Paul Beisler, who towed Appellant's vehicle,] credibly testified that [Appellant] was screaming and said "he wanted to 'F' her daughter" and "he wanted to get her daughter pregnant so he could cost…Officer Wolfe money that Officer Wolfe was costing him…." Both the Officer and the Witness testified that [Appellant] was asked numerous times to stop his belligerent behavior.

(Trial Court Opinion, filed 2/8/24, at unnumbered pp. 4-5) (internal citations omitted).

Procedurally, on November 12, 2021, the police filed a criminal complaint charging Appellant with the above-mentioned crimes. On September 1, 2022, following a bench trial, the court convicted Appellant of all counts. The court sentenced Appellant that day to six months' probation for disorderly conduct and imposed no further penalty for the remaining offenses. On Monday, September 12, 2022, Appellant timely filed a post-sentence motion, which the court denied on January 10, 2023. Appellant timely filed a notice of appeal on February 7, 2023. On February 27, 2023, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises one issue for our review:

Whether the evidence was sufficient to convict [Appellant] at Count One—Disorderly Conduct where the Commonwealth failed to prove, beyond a reasonable doubt, that his statements qualified as obscene language?

- 2 -

(Appellant's Brief at 4).

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the Appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

Appellant argues that he did not use "obscene" language as required to sustain his conviction for disorderly conduct. Appellant concedes that he made offensive statements. Nevertheless, Appellant insists that his statements did

- 3 -

not appeal to the prurient interest. Appellant acknowledges that he referenced impregnating Officer Wolfe's daughter, but he contends that he did not describe a specific sex act in a prurient manner. Appellant further claims that his statements did not qualify as "depicting or describing, in a patently offensive way, sexual conduct specifically defined by the applicable state law." (Appellant's Brief at 16). Appellant maintains that his statements "alluding to sex with the officer's daughter" merely meant to portray his wish to financially retaliate against Officer Wolfe. (*See id.*) Appellant avers that he did not intend to evoke sexual arousal or to appeal to a "shameful or morbid" sexual impulse. (*Id.* at 17). Appellant highlights that he did not even know Officer Wolfe's daughter and that he did not describe or name any specific sex act. Appellant posits that his comments were "stock insults" and "merely immature and the product of frustration at the expense of the tow." (*Id.* at 18-19). Appellant concludes the Commonwealth presented insufficient evidence to sustain his disorderly conduct conviction, and this Court must grant relief. We disagree.

The Crimes Code defines the offense of disorderly conduct, in relevant part, as follows:

> **§ 5503. Disorderly conduct**
>
> **(a) Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> \* \* \*

(3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S.A. § 5503(a)(3).

When determining whether language is "obscene" for purposes of Section 5503(a)(3), we apply the three-part test set forth in **Miller v. California**, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). **Commonwealth v. Kelly**, 758 A.2d 1284, 1286 (Pa.Super. 2000). This test requires us to decide: (1) whether the average person, applying contemporary community standards would find that the work (or statement), taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. **Id. See also Miller, supra** at 24, 93 S.Ct. at 2615. A "prurient interest" has "a tendency to excite lustful thoughts" which roughly encompasses "a shameful or morbid interest in nudity, sex, or excretion." **Roth v. United States**, 354 U.S. 476, 487 n.20, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957).

"Vulgar language, however distasteful or offensive to one's sensibilities, does not become a crime because people standing nearby stop, look, and listen." **Commonwealth v. Weiss**, 490 A.2d 853, 856 (Pa.Super. 1985). Thus, this Court has reversed a defendant's conviction for disorderly conduct under subsection (a)(3) where the defendant yelled "fuck the police" or other similar statements which are offensive or vulgar but lack a sexual connotation.

*See, e.g., Commonwealth v. Pennix*, 176 A.3d 340, 341-42 (Pa.Super. 2017) (reversing appellant's conviction for disorderly conduct where appellant stated to deputy in courthouse "Fuck you I ain't got time for this," "Fuck you police" and "I don't got time for you fucking police"); *Commonwealth v. McCoy*, 69 A.3d 658, 661 (Pa.Super. 2013), *appeal denied*, 623 Pa. 761, 83 A.3d 414 (2014) (reversing appellant's conviction for disorderly conduct where appellant shouted "Fuck the police" multiple times; there is no evidence that appellant's chant was intended to appeal to anyone's prurient interest nor did it describe, in patently offensive way sexual conduct); *Kelly, supra* at 1285 (reversing appellant's conviction for disorderly conduct where appellant said "Fuck you, asshole" to borough street department employee and displayed hand gesture of extending middle finger; here, appellant's use of "F-word" and middle finger were angry words and angry gesture having nothing to do with sex; rather, they were meant to express disrespect to, and to offend, borough employee); *Commonwealth v. Muhammad*, No. 690 MDA 2022, unpublished memorandum at 2 (Pa.Super. filed Jan. 11, 2023)[2] (reversing appellant's conviction for disorderly conduct where appellant told security officer "I'm not fucking talking to you" and said "fuck you" twice to deputy sheriff and security officer).

Conversely, this Court has upheld convictions under Section 5503(a)(3)

---

[2] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

where the defendant's remarks have a sexual component. Recently, in

***Commonwealth v. Rosenberger***, Nos. 477 EDA 2023, 496 EDA 2023, 2024

WL 3290755 (Pa.Super. filed July 3, 2024) (unpublished memorandum), this

Court affirmed the appellant's convictions for disorderly conduct under Section

5503(a)(3). On appeal, the appellant claimed that his comments did not

constitute "obscene" language under the statute and were merely vulgarities

that did not "involve conduct appealing to a prurient interest or the description

of sexual conduct in a patently offensive way." ***See id.*** at *4. This Court held

that the appellant's reliance on ***Pennix***, ***McCoy***, and ***Kelly*** was misplaced

because those cases involved "angry words … having nothing to do with sex."

***Id.*** at *4. In affirming the appellant's convictions, this Court explained:

> With respect to the first period, on March 8, 2021, [Victim's]
> security system recorded [Appellant] saying, "[F]uck you,
> cunt," and making four separate remarks that [Victim] was
> "trying to prosecute a person for jerking off in front of
> children." Taken as a whole, [Appellant's] rant, where he
> used an offensive term for female genitalia and a lewd term
> for describing masturbation, particularly when paired with
> the reference to children, all directed at a woman who
> refused his sexual advances, appealed to the prurient
> interest, described sexual conduct in a patently offensive
> way, and had no serious literary, artistic, political, or
> scientific value.
>
> With respect to the second period, on October 2, 2021,
> [Victim's] security system recorded [Appellant] calling
> [Victim] a "beautiful woman," then describing his conduct
> with respect to her as the "equivalent of a dick pic," asking
> "how high quality that dick pic was," stating that "dick pics
> usually have a way of giving the warning and a choice," and
> that he hoped [Victim] and her family remembered the "dick
> pic." The phrase "dick pics" refers to pictures of male
> genitalia which are sent to others for the purpose of inciting

sexual thoughts. Thus, we again conclude [Appellant] attempted to appeal to a prurient interest, described his conduct in a lewd and patently offensive way, and there was no serious literary, artistic, political, or scientific value to his words.

*Id.* at *5 (internal citations omitted).

Instantly, in evaluating Appellant's sufficiency challenge, the trial court reasoned:

> The Officer and the Witness were credible. The evidence supports the conviction of Disorderly Conduct § 5503(a)(3). The encounter took place on a public street with several individuals observing, recklessly creating alarm and annoyance. [Appellant's] conduct and words were obscene. In addition to being profane, [Appellant's] words were obscene because his language appeals to the prurient interest, and he described in a patently offensive way, sexual conduct directed toward the Officer's daughter. … The evidence established that [Appellant] persisted in his conduct after being requested to desist; thus, the conviction of the offense graded as a misdemeanor of the third degree was well supported.

(Trial Court Opinion at unnumbered p. 6).

The record supports the court's analysis. Officer Wolfe testified that Appellant stated "that he would be seeing my daughter. Then proceeded to tell me not to worry because he's a lover, not a fighter." (N.T. Trial, 9/1/22, at 9). Additionally, Paul Beisler testified that Appellant said, "he wanted to F [Officer Wolfe's] daughter and he wanted to … get her daughter pregnant so [he could] … cost Officer Wolfe money that Officer Wolfe was costing him by

- 8 -

having his car towed." (*Id.* at 25).[3]  Mr. Beisler interpreted Appellant's remarks as threatening Officer Wolfe.  (*Id.* at 28).

Unlike *Pennix*, *McCoy*, *Kelly*, and *Muhammad*, this case does not involve mere "angry words" having nothing to do with sex. *Compare Pennix, supra*; *McCoy, supra*; *Kelly, supra*; *Muhammad, supra*.  Rather, Appellant's comments that he is a "lover, not a fighter" and wanted to have sex with and impregnate the officer's daughter, satisfy the second and third prongs of the *Miller* test.  *See Miller, supra*;[4] *Kelly, supra*. *See also McCoy, supra*; *Rosenberger, supra*.  Thus, Appellant's comments constituted obscene language under existing relevant authority.  Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to sustain Appellant's conviction for disorderly conduct. *See* 18 Pa.C.S.A. § 5503(a)(3); *Sebolka, supra*.  Accordingly, we affirm.

Judgment of sentence affirmed.

President Judge Lazarus joins this opinion.

Judge Dubow files a dissenting opinion.

---

[3] In the affidavit of probable cause, Officer Wolfe relayed that Mr. Beisler had stated that Appellant said "I'm going to put my black dick in her daughter. Hopefully she gets pregnant."  (Affidavit of Probable Cause, 11/12/21, at 2). Thus, it appears that Mr. Beisler may have paraphrased Appellant's statement at trial.

[4] There is no dispute that Appellant's comments also satisfy the third prong of the *Miller* test because they lack "serious literary, artistic, political, or scientific value." *See id.* at 24, 93 S.Ct. at 2615.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 11/13/2024